## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Core Distribution, Inc.,                              Civil No. 15-1547 (DWF/BRT)

               Plaintiff,

v.                                                   **MEMORANDUM**
                                                     **OPINION AND ORDER**
Xtreme Power (USA) Inc.,

               Defendant.

_____

Grant D. Fairbairn, Esq., Laura L. Myers, Esq., and Nikola L. Datzov, Esq., Fredrikson & Byron, PA, counsel for Plaintiff.

Katherine M. Swenson, Esq., and Mark L. Johnson, Esq., Greene Espel PLLP, counsel for Defendant.
_____

## INTRODUCTION

Plaintiff Core Distribution, Inc. ("Core") is a Minnesota corporation that designs, manufactures, and supplies products including its signature telescoping ladder. Core alleges that Defendant Xtreme Power (USA) Inc. ("Xtreme") sells telescoping ladders that infringe Core's patent. In addition, Core claims that Xtreme makes false claims about these ladders in violation of state and federal law.

In this lawsuit, after Xtreme failed to respond to Core's Complaint, the Court granted Core's motion for default judgment and enjoined Xtreme from, among other things, selling the infringing telescoping ladders. Subsequently, the Court entered a civil

contempt order against Xtreme (and several related individuals and entities) for violating the Court's injunction.

Now, the Court considers Xtreme's motion for relief from the Court's contempt order, motion for relief from the Court's default judgment, and motion to dismiss. Because the evidence in the record does not show that Fen Fen Yu, Ying Sze, and Xi Tan had actual notice of the Court's order granting injunctive relief, the Court grants in part and denies in part Xtreme's motion for relief from the Court's contempt order.  Because Xtreme ignored this lawsuit on multiple occasions, despite valid service of process, the Court denies Xtreme's motion for relief from the default judgment.  Finally, because service of process was effective, the Court denies Xtreme's motion to dismiss.

## BACKGROUND

Xtreme was a California corporation that was dissolved on August 29, 2013. (Doc. No. 55 ("Kit Yan Sze Decl.") ¶ 2, Ex. A.)  Xtreme's sole owner was Kit Yan Sze. (*Id.* ¶ 1.)

On March 19, 2015, Core filed the Complaint in this lawsuit, naming Xtreme as the only defendant.  (Doc. No. 1 ("Complaint").)  According to the Complaint, Core owns U.S. Patent No. 7,048,094, dated May 23, 2006, and entitled "Extending Ladder and Associated Manufacturing Methods," and "Xtreme imports, manufactures, offers for sale, and/or sells telescoping ladders that infringe Core's patent."  (*Id.* ¶¶ 7-8, Ex. A.)  In particular, the Complaint alleges that Xtreme makes infringing ladders available to consumers on Amazon.com under both the Xtreme name and other brand names.  (*Id.* ¶¶ 9-11.)  Further, it alleges that Xtreme falsely claims that at least one model of its

2

allegedly infringing ladders complies with ANSI regulations.  (*Id.* ¶¶ 13-17.)  In

connection with these allegations, the Complaint asserts five counts:  (1) patent

infringement; (2) false advertising under the Lanham Act, 15 U.S.C. § 1125(a);

(3) violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44;

(4) violation of the Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67;

and (5) common law unfair competition.  (*Id.* ¶¶ 19-38.)

On March 23, 2015, Core served the Summons and Complaint on Xtreme by

personal delivery to Kit Yan Sze, whom Core believed to be Xtreme's chief executive

officer, at an address on West Holt Avenue in Pomona, California.  (Doc. No. 5.)  Xtreme

did not file an answer to the Complaint, so on April 24, 2015, the clerk of court entered a

default against Xtreme.  (Doc. No. 9; *see also* Doc. No. 10.)  On May 29, 2015, Core

moved for a default judgment.  (Doc. No. 13.)  On July 13, 2015, the Court granted the

motion and issued an order enjoining Xtreme from infringement and false advertising in

connection with its sale of telescoping ladders.  (Doc. No. 21 ("Injunction Order").)  It

also awarded damages of $438,000, attorney fees of $20,452, and costs of $1,030.04 to

Core.  (*Id.*)  On July 20, 2015, the clerk of court entered a judgment against Xtreme.

(Doc. No. 23 ("Default Judgment").)  Core mailed the Injunction Order and Default

Judgment to Xtreme via Kit Yan Sze.  (Doc. No. 24.)

On September 28, 2015, Core filed a motion for an order to show cause why

Xtreme and several persons allegedly affiliated with Xtreme should not be held in civil

contempt for violating the Court's Injunction Order.  (Doc. No. 27.)  In support of the

motion, Core submitted evidence that Xtreme—as well as XPMart, TZ Seller, Kit Yan

Sze, Fen Fen Yu, Terry Sze, Siu Fung Sze,[1] Ying Sze, and Xi Tan (the "Affiliated

Persons")—were selling infringing ladders on Xtreme's company website and

Amazon.com. (*See generally* Doc. No. 30 ("Fairbairn Decl.").)   In particular, Core

submitted evidence that:  (1) XPMart was operating an Amazon.com storefront that

displayed Xtreme's logo; (2) XPMart used "XtremePower" as one of its names on

Amazon.com; and (3) TZ Seller, Fen Fen Yu, Terry Sze/Siu Fung Sze, Ying Sze, and Xi

Tan were names affiliated with XPMart on Amazon.com. (*Id.* ¶¶ 4-5, 12, Exs. A-C, J.)

Further, Core provided evidence that its attorney contacted the operator of the

Amazon.com storefront apparently affiliated with Xtreme and XPMart. (*Id.* ¶ 4, Ex. A.)

The attorney advised the storefront operator of the Injunction Order and requested

information about the operator. (*Id.*)  The operator, however, refused to provide any

identifying information. (*Id.*)  In light of the evidence provided by Core, on October 5,

2015, the Court issued an order to show cause, requiring Xtreme and the Affiliated

Persons to appear at a hearing scheduled for November 13, 2015. (Doc. No. 34 ("Show

Cause Order").)

Core mailed the Show Cause Order to Xtreme and the Affiliated Persons at three

California addresses. (Doc. No. 35.)  Xtreme and the Affiliated Persons, however, failed

to appear as required by the Court. (*See* Doc. No. 36.)  On November 17, 2015, the Court

issued an order holding Xtreme (which the order characterized as "doing business under

Amazon Seller ID 885270256 on Amazon.com") and the Affiliated Persons in civil

---

[1]     According to Siu Fung Sze's declaration, Siu Fung Sze also goes by the name
Terry Sze.  (Doc. No. 46 ("Siu Fung Sze Decl.") ¶ 1.)  That is, Siu Fung Sze and Terry
Sze are the same individual.

contempt.  (Doc. No. 39 ("Contempt Order") ¶ 1.)  The Contempt Order directed Xtreme
and the Affiliated Person to comply with the Court's July 13, 2015 Injunction Order and
to pay fees, costs, and expenses of $20,909.70 to Core.  (Id. ¶¶ 2, 4.)  In addition, the
Contempt Order imposed contempt fines of $5,000 per day until Xtreme and the
Affiliated Persons complied with the Injunction Order.  (Id. ¶ 3.)

The next day, on November 18, 2015, Xtreme filed a motion for relief from the
Contempt Order.  (Doc. No. 41.)  In support of the motion, Xtreme submitted
declarations by Kit Yan Sze (on behalf of herself and Xtreme), Terry Sze/Siu Fung Sze
(on behalf of himself, XPMart, and TZ Seller), Fen Fen Yu, Ying Sze, and Xi Tan, all
attesting that they were currently in compliance with the Court's Injunction Order.  (Doc.
Nos. 44-48.)

One week later, on November 25, 2015, Xtreme filed a motion seeking relief from
the Default Judgment and dismissal of this lawsuit.  (Doc. No. 52.)  In support of that
motion, Xtreme filed another declaration by Kit Yan Sze.  (Kit Yan Sze Decl.)
According to her declaration, Kit Yan Sze received the Summons and Complaint in
March 2015, but, at that time, she did not believe that Xtreme had any obligation to
respond because it had been dissolved for approximately a year and a half.  (Id. ¶ 4.)  In
fact, Kit Yan Sze did not seek legal advice until months later, "some weeks after" she
received a copy of the Show Cause Order by mail in October 2015.  (Id.)  Further,
Kit Yan Sze's declaration states that Kit Yan Sze:  (1) believed, on the date of the
declaration, that she was in compliance with the Injunction Order; (2) was not importing,

manufacturing, or selling telescoping ladders; and (3) had no plans to import, manufacture, or sell telescoping ladders in the future.  (*Id.* ¶ 5.)

## DISCUSSION

### I.   Xtreme's Motion for Relief From the Court's Contempt Order

The Court begins by addressing Xtreme's motion for relief from the Court's Contempt Order, which Xtreme filed the day after the Court issued the Contempt Order. Xtreme asks the Court to:  (1) vacate the Contempt Order as to Fen Fen Yu, Ying Sze, and Xi Tan;[2] and (2) terminate the $5,000-per-day contempt fines as to Xtreme and all Affiliated Persons.

Xtreme does not clarify the rule under which it brings its motion.  Courts, however, generally analyze motions for reconsideration under Rule 59(e), if the motion is filed within twenty-eight days of the order of which it complains and such order is final. *See* Fed. R. Civ. P. 59(e); *S.E.C. v. Bilzerian*, 729 F. Supp. 2d 9, 12-13 (D.D.C. 2010); *cf. Omaha Indem. Co. v. Wining*, 949 F.2d 235, 238 (8th Cir. 1991) ("Interlocutory civil contempt orders are not appealable by a party.").  Here, Xtreme filed its motion for relief from the Contempt Order one day after the Court entered the Contempt Order.  The Contempt Order is a final order, rather than an interlocutory order, because a final judgment has been entered in the underlying lawsuit.  Accordingly, the Court applies Rule 59(e), which permits parties to file motions to alter or amend judgments, to Xtreme's motion.

---

[2]   Xtreme asks the Court to vacate the Contempt Order as to Fen Fen Yu, Ying Sze, and Xi Tan in its reply brief.  (Doc. No. 65 at 8.)

6

In determining whether to grant a motion under Rule 59(e), a district court exercises broad discretion. *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). A Rule 59(e) motion "is intended to correct manifest errors of law or fact or to present newly discovered evidence." *Knish v. Stine*, 347 F. Supp. 2d 682, 685-86 (D. Minn. 2004). In addition, "a court has the power to revisit its prior decisions when the initial decision was clearly erroneous and would work a manifest injustice." *Innovative Home*, 141 F.3d at 1288 (internal quotation marks omitted). In this context, the Court turns to Xtreme's two requests for relief.

First, Xtreme asks the Court to modify the Contempt Order so that it does not apply to non-parties Fen Fen Yu, Ying Sze, and Xi Tan. Rule 65(d)(2) specifies the persons who may be bound by an injunction (such as the Court's July 13, 2015 Injunction Order), stating:

> [An order granting an injunction] binds only the following *who receive actual notice of it by personal service or otherwise*:
>
> > (A) the parties;
> >
> > (B) the parties' officers, agents, servants, employees, and attorneys; and
> >
> > (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(d)(2) (emphasis added). In this case, even if Fen Fen Yu, Yin Sze, and Xi Tan were "officers, agents, servants, [or] employees" of Xtreme or "in active concert or participation with" Xtreme or Kit Yan Sze, there is no evidence that Fen Fen Yu, Yin Sze, and Xi Tan ever received "actual notice" of the Injunction Order issued by the

7

Court.[3]  Accordingly, they were not bound by the Injunction Order under Rule 65(d)(2), and they should not be held in contempt for violation of the Injunction Order.  Thus, to prevent error and injustice, the Court modifies the Contempt Order to reflect that Fen Fen Yu, Yin Sze, and Xi Tan are not in contempt.

Second, Xtreme seeks removal of the $5,000-per-day contempt fines imposed on the remaining individuals and entities subject to the Contempt Order:  Xtreme, Kit Yan Sze, Terry Sze/Siu Fung Sze, XPMart, and TZ Seller.  Although declarations submitted by Xtreme provide evidence that Xtreme, Kit Yan Sze, Terry Sze/Siu Fung Sze, XPMart, and TZ Seller are now in compliance with the Court's Injunction, these declarations do not state that these individuals and entities were in compliance with the Court's Injunction before the Court issued the Contempt Order.  Thus, as to these individuals and entities, the Contempt Order is not erroneous or unjust.  Further, the $5,000-per-day fines are not unfair to Xtreme, Kit Yan Sze, Terry Sze/Siu Fung Sze, XPMart, and TZ Seller, because the Court will only impose the fines if these individuals and entities choose to violate the Injunction Order.  If they comply, they will pay no contempt fines.  Therefore, modification of the Contempt Order to vacate the contempt fines is unwarranted.

---

[3]     Xtreme does not claim that Xtreme, Kit Yan Sze, Terry Sze/Siu Fung Sze, XPMart, and TZ Seller lacked actual notice of the Injunction Order.  Indeed, Core mailed the Injunction Order to Xtreme via Kit Yan Sze.  (Doc. No. 24.)  Counsel for Core advised XPMart and TZ Seller of the Injunction Order via e-mail.  (Fairbairn Decl. ¶ 4, Ex. A.)  And, Terry Sze/Siu Fung Sze claims that he used the names XPMart and TZ Seller to do business on Amazon.com.  (Siu Fung Sze Decl. at ¶ 2.)

## II.      Xtreme's Motion for Relief From Judgment

Next, Xtreme moves for relief from judgment under Rule 60(b), which provides

that a court, "[o]n motion and just terms . . . may relieve a party or its legal representative

from a final judgment, order, or proceeding" for any of several enumerated reasons or for

"any other reason that justifies relief."  Fed. R. Civ. P. 60(b).  Xtreme argues that it is

entitled to relief under Rule 60(b)(4), for void judgment, and Rule 60(b)(1), for excusable

neglect.  The Court considers each argument in turn.

### A.      Relief Under Rule 60(b)(4) for Void Judgment

Xtreme first asks the Court to vacate the Default Judgment under Rule 60(b)(4),

which provides that a Court may grant relief from a final judgment when "the judgment

is void."  Fed. R. Civ. P. 60(b)(4).  According to Xtreme, Core failed to validly serve

Xtreme with the Summons and Complaint; thus, the Court never had personal jurisdiction

over Xtreme, and the Default Judgment is void.

The Court begins by considering whether Core validly served Xtreme, which, at

the time of service, was a dissolved California corporation.  Rule 4(h)(1) states, in

relevant part, that a corporation may be served with process:

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer,
> a managing or general agent, or any other agent authorized by appointment
> or by law to receive service of process . . . .

Fed. R. Civ. P. 4(h)(1).  Rule 4(e)(1), referenced in subsection (A), provides that service

may be effected by "following state law for serving a summons in an action brought in

courts of general jurisdiction in the state where the district court is located or where

service is made." Fed. R. Civ. P. 4(e)(1).

In light of Rule 4(e)(1), the Court turns to the law of California, the state where

Kit Yan Sze received the Summons and Complaint.  Under the California Code of Civil

Procedure:

> A summons may be served on a corporation that has forfeited its charter or
> right to do business, or has dissolved, by delivering a copy of the summons
> and of the complaint:
>
> (a) To a person who is a trustee of the corporation and of its stockholders or
> members; or
>
> (b) When authorized by any provision in Sections 2011 or 2114 of the
> Corporations Code . . . as provided by such provision.

Cal. Civ. Proc. Code § 416.20.  Section 2011 of the California Corporations Code,

referenced in subsection (b), regulates actions against dissolved corporations and their

shareholders.  Cal. Corp. Code § 2011.  Among other things, it provides the methods for

serving dissolved corporations, stating in part:

> Summons or other process against [a dissolved] corporation may be served
> by delivering a copy thereof to an officer, director or person having charge
> of its assets or, if no such person can be found, to any agent upon whom
> process might be served at the time of dissolution.

Cal. Corp. Code § 2011(b).  Thus, the director of a dissolved corporation may accept

service on behalf of the dissolved corporation.

Here, it is undisputed that a process server delivered a copy of the Summons and

Complaint to Kit Yan Sze.  According to Kit Yan Sze's declaration, Kit Yan Sze was the

sole owner of Xtreme.  (Kit Yan Sze Decl. ¶ 1.)  Moreover, the Certificate of Dissolution

and the Certificate of Election to Wind Up and Dissolve identify Kit Yan Sze as the sole director of Xtreme.  (*Id.* ¶ 2, Ex. A.)  Thus, under California law, Xtreme was validly served through its director, Kit Yan Sze.

Xtreme argues that once a corporation dissolves, it no longer exists and therefore has no officers and directors who can accept service.  It relies on *Sharp v. Eagle Lake Lumber Co.*, 212 P. 933, 934-35 (Cal. Dist. Ct. App. 1923), which states the common law rule that a dissolved corporation is "legally dead" and thus service on a dissolved corporation's former officer is "an absolute nullity."  However, the California Supreme Court has since made clear that "California no longer follows the common law rules with respect to . . . the dissolution of a corporation."  *Peñasquitos, Inc. v. Superior Court*, 812 P.2d 154, 156 (Cal. 1991).  Indeed, under the statutory scheme that replaced the common law rule in California, "a corporation's dissolution is best understood not as its death, but merely as its retirement from active business."  *Id.* at 160; *see also* Cal. Corp. Code § 2010 ("A corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets, but not for the purpose of continuing business except so far as necessary for the winding up thereof.").  Thus, because dissolved California corporations continue to exist as legal entities, Xtreme's argument is without merit.

Xtreme also relies on *Haskins v. Fuller-O'Brien, Inc.*, Civ. No. 11-5142, 2013 WL 1789672, at *3 (N.D. Cal. Apr. 26, 2013), which held that service of process on a surrendered Delaware corporation's former president was invalid.  Xtreme suggests that

it cannot be served through its former owner and director just as the *Haskins* defendant could not be served through its former president.  In *Haskins*, however, the court assumed that California Corporations Code § 2011 did not apply to the defendant, because the defendant was not a California corporation.  *Haskins*, 2013 WL 1789672, at *3 n.5.  In this case, where Xtreme is a dissolved corporation formed under the laws of California, § 2011 applies, and Xtreme's reliance on *Haskins* is misplaced.

The Court concludes that Core validly served Xtreme under Rule 4(e)(1), Rule 4(h)(1)(A), and the law of California.  Accordingly, the Default Judgment is not void for lack of personal jurisdiction, and Xtreme is not entitled to relief under Rule 60(b)(4).

### B.    Relief Under Rule 60(b)(1) for Excusable Neglect

Xtreme also requests relief under Rule 60(b)(1), which states that a court may relieve a party for "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  Xtreme claims that its failure to respond to the Summons and Complaint constitutes excusable neglect; thus, the Default Judgment should be vacated.

Excusable neglect, under Rule 60(b)(1), "is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993).  In determining whether a party's conduct is excusable, courts consider "all relevant circumstances surrounding the party's omission."  *Id.* at 395.  Factors taken into account include:  the danger of prejudice to the non-moving party; the length of the delay and its potential impact on judicial proceedings; whether the movant acted in good faith; and the

12

reason for the delay, including whether the reason was within the reasonable control of the movant. *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866 (8th Cir. 2007) (citing *Pioneer*, 507 U.S. at 395). In addition, courts consider the existence of meritorious defenses. *Union Pac. R.R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 783 (8th Cir. 2001). The Eighth Circuit recognizes that the above factors "do not carry equal weight," and the reason for the delay "must have the greatest import." *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000).

First, the Court considers the length of the delay caused by Xtreme's neglect, the potential impact of that delay, and the danger of prejudice to Core. Xtreme filed its motion for relief from judgment approximately eight months after Core served Xtreme with the Summons and Complaint and approximately four months after the Court entered the Default Judgment against Xtreme. The length of the delay, therefore, is moderate.[4] The delay has impacted the proceedings by, arguably, forcing Core to expend time and money to stop sales of infringing ladders by Xtreme or under Xtreme's name—particularly, through the contempt proceeding. Still, the risk of future prejudice to Core is relatively minor. If the Court vacates the Default Judgment, Core will simply be forced to litigate the case on the merits, which is not prejudicial to Core. *See Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 785 (8th Cir. 1998) (stating that, under Rule 55(c), "prejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits"); *MIF Realty L.P. v. Rochester Assocs.*, 92

---

[4]     The Court notes that eight months is less than the one-year limit set by Rule 60(c)(1) for motions under Rule 60(b)(1). *See* Fed. R. Civ. P. 60(c)(1).

13

F.3d 752, 757 (8th Cir. 1996) (noting that, in Rule 60(b) analysis, providing movant with hearing on the merits would not prejudice non-movant).  These factors weigh slightly in favor of Xtreme.

Second, the Court considers the reasons for Xtreme's neglect.  According to Xtreme, it failed to respond to the Summons and Complaint because Kit Yan Sze did not believe that Xtreme, as a dissolved corporation, had any obligation to respond.  Indeed, Kit Yan Sze claims that she sought legal counsel only when the Court's Show Cause Order identified her individually and ordered her to appear.  Mistakes of law, however, do not constitute excusable neglect under Rule 60(b)(1).  *Jefferson v. Hicks*, 364 F. App'x 281, 283 (8th Cir. 2010), *Ceridian Corp. v. SCSC Corp.*, 212 F.3d 398, 403-04 (8th Cir. 2000); *see also Mazengo v. Mzengi*, 542 F. Supp. 2d 96, 99 (D.D.C. 2008) ("Ignorance of one's legal obligations does not constitute the type of 'mistake' or 'neglect' that Rule 60(b)(1) excuses.").  Although application of this rule against a pro se litigant like Xtreme may seem harsh, Kit Yan Sze—who understood enough law to incorporate and dissolve a business entity—could have sought legal advice about that business entity's legal obligations.  Moreover, neither Kit Yan Sze nor another representative appeared on behalf of Xtreme at the contempt hearing.  By failing to appear, Xtreme violated the Court's Show Cause Order.  Xtreme offers no reason for that failure.  This factor weighs in favor of Core.

Third, the Court considers whether Xtreme acted in good faith.  Xtreme does not deny that it received multiple filings in this case, including (but not limited to) the Summons and Complaint, Injunction Order, Default Judgment, and Show Cause Order.

14

Yet, Xtreme did not appear until after the Court issued the Contempt Order.  Xtreme's

multiple failures to comply suggest bad faith.  *See In re Guidant*, 496 F.3d at 867.  This

factor weighs in favor of Core.

Fourth, the Court considers whether Xtreme has meritorious defenses to Core's

claims against it.  Xtreme's primary defense is that the Complaint does not allege any

conduct by Xtreme that occurred before August 29, 2013, the date of Xtreme's

dissolution.  Any conduct that occurred after the dissolution, in Xtreme's view, cannot be

attributed to Xtreme because a dissolved corporation cannot continue to engage in

business.  *See* Cal. Corp. Code § 2010.  The Court, however, disagrees with the premise

of Xtreme's argument—that all conduct alleged by Core occurred after Xtreme's

dissolution.  Indeed, the Complaint does not specify the date when it alleges Xtreme

began selling the allegedly infringing ladders.  And, Xtreme's own records, submitted to

the Court, suggest that Xtreme imported thousands of telescoping ladders in 2012 and

early 2013, prior to Xtreme's dissolution.  (Doc. No. 67 ¶¶ 2-3, Ex. A.)  Thus, the Court

questions the merit of this defense to Xtreme's liability.

In addition, Xtreme claims it has a defense to Core's damages claim, asserting

that:  (1) Xtreme's records, which Xtreme has submitted to the Court, demonstrate that

Xtreme sold far fewer ladders than the number claimed by Core; (2) Xtreme never would

have agreed to the hypothetical royalty rate that Core asserts; and (3) Xtreme's conduct

was not willful and therefore does not justify an award of treble damages.  In the Court's

view, this defense is potentially meritorious, as the Court based the damages awarded in

connection with the Default Judgment solely on representations presented by Core. Still, because Xtreme's liability defense is weak, this factor weighs slightly in favor of Core.

In light of "all relevant circumstances," the Court concludes that Xtreme's failure to respond to the Summons and Complaint is not excusable neglect under Rule 60(b)(1). *See Pioneer*, 507 U.S. at 395. Xtreme ignored this lawsuit for months, despite having actual knowledge of it, and it even failed to appear in response to the Court's Show Cause Order. As such, the Court denies relief under Rule 60(b)(1).

## III.    Xtreme's Motion to Dismiss

Finally, Xtreme moves to dismiss Core's Complaint, under Rule 4(m) and Rule 12(b)(5), for insufficient service of process. *See* Fed. R. Civ. P. 4(m), 12(b)(5). As explained above, service of process was valid in this case. Accordingly, there is no basis for dismissal.

## CONCLUSION

Because the record lacks evidence showing that Fen Fen Yu, Ying Sze, and Xi Tan had actual notice of the Court's July 13, 2015 Injunction Order, the Court amends the Contempt Order to reflect that those three individuals are not adjudged in civil contempt. The Court, however, finds no basis for vacating the Default Judgment entered against Xtreme or for dismissing this lawsuit.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1.      Xtreme's Motion for Relief From Order Holding Xtreme Power (USA) Inc. and Related Parties in Civil Contempt (Doc. No. [41]) is **GRANTED IN PART AND DENIED IN PART**.  The Court amends its Order Holding Xtreme Power (USA) Inc. and Related Parties in Civil Contempt (Doc. No. [39]) as follows:

      a.      The last sentence of the first introductory paragraph is amended to state:  "Accordingly, the Court ordered Xtreme and its officers, agents, servants, directors, employees, affiliated entities, and those persons in active concert or participation with any of them, including XPMart, TZ Seller, Kit Yan Sze, Terry Sze, and Siu Fung Sze, to immediately comply with the Court's July 13, 2015 Order and appear before the court on Friday, November 13, 2015, at 2:00 p.m."

      b.      The first numbered paragraph is amended to state:  "Xtreme (doing business under Amazon Seller ID 885270256 on Amazon.com) and its officers, agents, servants, directors, employees, affiliated entities, and those persons in active concert or participation with any of them, including XPMart, TZ Seller, Kit Yan Sze, Terry Sze, and Siu Fung Sze ("Named Parties") are adjudged in civil contempt of this Court's July 13, 2015 Order."

2.      Xtreme's Motion for Relief From Default Judgment and to Dismiss Complaint (Doc. No. [52]) is **DENIED**.

Dated:  May 10, 2016        s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge